Good morning, Your Honors. My name is Joe Kravis. I represent the Plaintiff Appellants Skye Astiana and Tamar Larson. In this case, this case is about a consumer cosmetic mislabeling of defendants Jason's cosmetic products, which are bath and body lotions. We allege they were mislabeled as being natural when in fact they contained multiple synthetic and artificial ingredients. They are well recognized to be as such. The issue presented in this appeal is whether or not the district court, in dismissing the case and entering judgment, did so in error. The answer is, yes, it was in error. First, the Supreme Court very clearly has said that when you want to find a case is subject to primary jurisdiction, a district court's options are either to stay and refer, because the whole point of primary jurisdiction is to get advice on a technical issue or guidance on a technical issue from the Federal regulator. So the classic application of this is to stay and refer. The Supreme Court in Ritter also gave the district court a second option, that if the district court determined that there would be no actual prejudice to the parties from a dismissal, the district court could dismiss without prejudice. Here, the district court, while purporting in the order to dismiss without prejudice, actually entered judgment against the plaintiff in favor of the defendant. I can't think of a more prejudicial action. But putting that aside, the court could not in this case dismiss without prejudice. The reason is that the plaintiffs alleged purchases over the entire statute of limitations period preceding their filing of the complaint. Here, the applicable statutes were 3 and 4 years. So if you dismiss the case, the clock begins to run and they start losing claims. Likewise, the proposed class, we allege a period throughout the entire statutory period. Likewise, American pipe tolling, which would apply during the penancy of the class action, would stop applying upon dismissal. And had the district court simply invoked primary jurisdiction but stayed rather than dismissed, you wouldn't have appealed? Oh, we absolutely would have.  Yeah. And I'm not going to do that. You had your other claim, too. Yes. Yes. And quite frankly, just cutting to the core of it, since the dismissal, we wrote the FDA and said, do you want to define the term natural? They wrote back to us and said no. As Your Honors pointed out they know they said that, but normally in some of these other district court cases what's happening is there's a court referral to the FDA, there's a stay of the proceeding. In your case, the letter you wrote, as I recall, wasn't even copied to the opposing counsel. Is that true? That is true. And it said that it was a referral from the court when, in fact, there was no referral from the court, right? Well, it was kind of the case. Was there a referral from the court? There was no. There was no express referral. Okay. And then you cited a CFR that wasn't even relevant to the litigation. So my question, if you stack up all those issues, is how can we treat the FDA letter that you got back as equivalent to one where there was a referral or a specific inquiry on behalf of an individual that laid out everything that gave the opposing counsel notice? Well, if the FDA had written back and said your letter is procedurally improper, I would absolutely agree that the letter would apply. But they, in fact, wrote back and expressed their views on it, and then followed that up with the statement that Your Honors pointed out in the January 15th, 2015 order, which is totally consistent with their letter response, which says we are not going to regulate the term natural for cosmetic labeling. Cosmetic labeling, the false and misleading standard applies to cosmetic labeling. But isn't your basic position that invoking primary jurisdiction is error in itself, not the procedures that followed after that? It is. And that's the second point. So tell me why the district court erred in saying, you know, this is a proper case for primary jurisdiction. Sure. First of all, you know, the Supreme Court has said that the doctrine of primary jurisdiction is not a doctrine of futility. The FDA has time and again refused to define natural as it applies to cosmetic labeling. They have said time and again that the false and misleading standard, which is the general standard that applies both under the FDCA as well as under the Sherman law of California, they're identical standards, that is what governs the term natural in labeling. Just like any other terminology you use on the package that the FDA doesn't want to specifically regulate. So for primary jurisdiction, you have to have some notion that the regulator actually wants to say something about it. I mean, you can lead a horse to water, but you can't make them drink. This Court was faced in the unpublished opinion of Chavez v. Nestle with a similar situation. There was a Juicy Juice food, and they had made some statements about, you know, brain development and so forth. And there the Court said, look, the FDA has expressed no interest in regulating this. What's the point of sending it to them? So here we have, and the FDA in a parallel food regulation has said multiple, multiple times, we don't want to regulate it. We then have gone to them with cosmetic labeling. In this case, they said, no, I understand your point about the letter. But then they made a policy statement and put it on their website saying, we're not going to regulate it. I mean, what's the point of sending it to them? I mean, are you going to send it again? Are we going to require the district court to refer it so the FDA then can come back and say, look, for the third and fourth and fifth time, we really don't want to regulate the term natural? Aren't we wasting everybody's time at this point? So this is why the Supreme Court said, look, you know, it's not a doctrine of futility. I think we have that here. But except that, all of these events, most of the events, occurred after the district court took action. Yes. Let's assume, for the sake of argument, the district court had formally referred this issue to the FDA and gotten an answer. What's wrong with that? Well, there would be nothing wrong with it, other than I mean, it's in her discretion. And I, look, so you can debate that. So why was it an abuse of discretion for her to invoke primary jurisdiction in the first instance? Well, it was an abuse procedurally, the way she did it, by dismissing the case. But also, you know, here, again, there's been no interest by the FDA. What was — what is really at issue in our case is whether or not the label is false and misleading. Well, that's a standard the courts apply every day. I mean, we've cited a number of cases, including the Lockwood case, in which they say, look, things that — that's not a technical expertise question, whether or not something's false and misleading. And in our case, we don't play in a gray area. In our case, every ingredient that we list has been well recognized by one regulation or another, factually, from a scientific fact, as either not existing in nature at all or being synthetic. So we're not even in a gray area for the FDA to really debate about. I mean, that's not this case. So, you know, and if the FDA had answered the question of what is natural and what isn't, it wouldn't resolve the case. It would be guidance to the court, and then the court would have to determine if what was done in this case was false and misleading. It would have to then apply the UCL and the other standards, materiality and so forth, and adjudicate the case. So, you know, from all those points of view, and applying this Court's standard under Davel, which is if there are any set of facts where reference to the regulator wouldn't — you know, would not be appropriate, then you should not refer it on a motion to dismiss. And I think this case fell right into that. But I get back to the salient point, which the Eighth Circuit faced in the owner-operator independent driver's case v. New Prime. There, after the district court had referenced the case to the regulator on primary jurisdiction, the regulator came out and said, we don't want to regulate. And the court said, citing the futility, you know, comment by the Supreme Court, said, okay, what's the point? I mean, it's futile at this point. We understand these events happen after the district court's order, but we have a de novo review, as Your Honors do. And we're going to look at this and we're going to say, at this time, it's just completely inappropriate. And I posit to you that that's exactly the situation we have here. In response, the defendant really didn't put up much of an argument on the primary jurisdiction. Their response mostly was, well, there are other grounds. Sotomayor, preemption. Preemption. Preemption does not apply here. You know, Your Honor, Judge Cowan, in the Perez case, Your Honor described the narrow gap that you have to fall through in order to avoid preemption in these circumstances. And I think you stated the plaintiff must be suing for conduct that violates the FDCA, but the plaintiff must not be suing because the conduct violates the FCA. That is exactly what we did. We expressly pleaded in paragraph 6 of our complaint, but to lay it out for you, you know, like the medical device statute that they faced in the lower Medtronics v. Lohr case, here there is a saving statute that Congress had. It's 21 U.S.C., section 379S, very akin to what the medical device saving statute is, and it basically says a State law duty is not preempted unless it is different from or in addition to the Federal requirement. The lower court further said what we mean is the standard of conduct. So the fact that you bring a State cause of action, like a UCO claim that has materiality as an element or negligence claim that has, you know, duty and breach of duty and different remedies, that is not what we're talking about. And the Court very clearly, the Supreme Court very clearly said in that case that it imposes additional obstacles for a plaintiff to impose liability on a defendant. And where, and the terminology that they actually used was, and I'll read it to you because I think it's significant, while such a narrower requirement might be different from the Federal rules in the literal sense, such a difference would surely provide a strange reason for finding preemption of a State rule insofar as it duplicates the Federal rule. Here, the rule we're suing under is the rule that says a cosmetic is misbranded if it is false and misleading in any particular. That is the standard under the FDCA, and the identical standard was adopted under the Sherman law. We cite that not only expressly in our complaint, we cite it in our brief, it is the identical standard. And that Sherman law standard is what we say was violated, and the identical FDCA standard was violated when they falsely and misleadingly labeled their product as natural, when it contains synthetic and artificial ingredients. And that is the premise of every single one of our causes of action. So I get back to the narrow gap. We fall right into the narrow gap. Lastly, on the quasi-contract, the judge erred on dismissing that claim. The California law is very clear where fraud is the basis of your claim. Quasi-contract can be pled as an alternative remedy. Your Honors. Roberts. Roberts. I'd like to reserve. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. James Schurz, Morrison & Forster, on behalf of Haines Celestial Group and the Jason Natural Products. I'd like to begin, Your Honors, by addressing the Court's order of January 14, directing counsel to be prepared to discuss the applicability of a statement found on the FDA website, specifically as to can I label my cosmetics natural or organic, and its application to the primary jurisdiction doctrine. We take from this website and the frequently asked questions three primary messages. First, it's an example of FDA's continuing regulation of cosmetics labeling and affirms FDA's continuing authority over this issue. Second, it confirms that the requirements for safety in labeling apply to all cosmetics no matter what their source. It confirms that the FDA has not defined the term natural in cosmetic labeling. And accordingly, this case presents an issue of first impression to the agency, namely that the FDA has not at this time defined the term natural, provided informal guidance or any communication to parties with respect to how this particular term is to be used in the context of cosmetics. It's important to distinguish... So where does that leave us if we accept what you say? It leaves us exactly where Judge Hamilton properly left this case. I don't understand how a district court judge can just dismiss a case without transferring it under the theory of primary jurisdiction. Primary jurisdiction allows the district court judge to either stay the case and refer the alternative to dismiss without prejudice and allow the parties to proceed. So what's proceeding in front of the agency now? What proceed? Yes. I mean, I understand the doctrine of primary jurisdiction under dismissal when the parties say we are going to pursue our remedies in front of the agency. So what's happening in front of the agency? There has been no proceeding in front of the agency because the plaintiff in this case, the appellant, did not choose to file the proper petition which would be... Well, is that the plaintiff or the court's obligation? That's for the plaintiff. Or yours. Under 21 CFR. Or yours. You were the one who asked the court to invoke the doctrine of primary jurisdiction. Yes, we did. Why didn't you file a petition? We could have, I suppose. It was incumbent. And either party in this position could have filed a citizen petition under 21 CFR 10.30. Right. That is a formal procedure, and it provides for a degree, it provides the Commissioner with a range of powers in adjudicating that petition, and it provides the opportunity for all interested persons to participate in that proceeding. That's not what happened here. Well, I understand that, but that's my question. I mean, the notion, at least as I understand it, of primary jurisdiction is that one expects the agency to conduct some action. You know, the parties are going to pursue the remedies or the court transfers. I don't think there's an option for it just to be dismissed and go away. The agency is supposed to do something. And it either does something on the representation of the parties generally, that they're going to pursue the remedies, or it's transferred. But that didn't happen here. So where does that leave us? I think where it leaves us, Your Honor, is for the parties, either of the parties and in this case it would be incumbent upon the plaintiff and the appellants here, to file a citizen petition under 21 CFR 10.30 and proceed. Why do they have to do that? I mean, why wouldn't, even if the notion that primary jurisdiction should be pursued here, why shouldn't it simply be a court referral, get an answer and then proceed? I mean, once you dismiss a complaint as filed here, you run into all sorts of other procedural issues. So would you object if it were, in effect, stayed and then referred? Yes, Your Honor. And why would you object? For the following reason. In the first instance, had Judge Hamilton elected at the outset to refer this matter under 1025, she certainly could have done so. And that would have been entirely appropriate and within the Court's discretion to do so. And did you argue that? We indicated that the judge was afforded the opportunity in her discretion to either dismiss without prejudice or to refer to the agency. So, yes, we indicated both potential outcomes to the Court. The reason we would object, Judge McKeown, to the any remand at this stage is that the question as to whether there has been some prejudice or any prejudice would result as a result of a dismissal without prejudice in this case was not raised below. So that issue is waived and is not properly before this Court. So for that reason, while Judge Hamilton certainly could have referred this matter, the fact that she chose to do so in the absence of any evidence that there would be any prejudice or injury to these particular plaintiffs, she was allowed to do that, and it's not appropriate for these appellants to come before this Court for the first time and claim that Judge Hamilton erred in dismissing without prejudice when they did not put that issue before her in the underlying motion. Judge McKeown, if I may. Go ahead. You know, given everything that's in the record, maybe some extra record stuff, but, you know, the FDA's website and everything, given all we know about this natural issue before the FDA, doesn't it seem like a referral is futile? No, Judge Tshishima, for the following reasons. First, with respect to the issue of the use of the term natural, that issue has been before the FDA in the context of food labeling now. But we're talking about cosmetics here. And in cosmetics, it has not been. And that's the distinction. If we don't eat cosmetics. That's the distinction that we have urged upon this Court, that these are very different standards, and the FDA treats these issues differently. So for over 20 years, there has been an informal policy that the FDA has used for natural and food labeling. It was the product of two separate rulemaking proceedings, one in 1991 and one in 1993, in which the FDA acknowledged the difficulty in defining the term natural in foods, in which it acknowledged that natural means different things in different contexts, and elected not to define the term, but rather to provide guidance in the form of an informal policy. That informal policy has guided district courts in this circuit now since 1993. There have been further requests from district court judges to the FDA to ask for further clarification with respect to that informal guidance. And those requests have returned and referred the parties back to the informal guidance, saying, we believe this is adequate and appropriate at this time. And courts, importantly, have applied that informal guidance. As recently as this last year, Judge Koh in the Northern District, in a case involving Dole, applied the informal policy in granting a motion for summary judgment. Let's get to cosmetics. So we now have no actual ruling out of the FDA, but we have quite clearly on their website that basically says, we're not going to regulate that. So why isn't it futile to send it back over and say, could you just tell us that again? Judge McKeon, I don't believe the reading of the website indicates that they do not intend to regulate. What it states, plainly and clearly, is that we do not have a definition or a regulatory definition for natural. It does not indicate that the FDA does not intend at some future time to offer guidance or to comment upon the application of this issue. It has never been asked. That's the important piece. And to your question, the importance of the letter from Dr. Linda Katz here is meaningful because that doesn't indicate an expression of the FDA's position. It cannot. A piece of private correspondence from a subordinate official cannot constitute   Sotomayor Well, let's just assume we put that over on the shelf for now, just because it came after the district court and it arose in the context that it did. But we're still left with this. I mean, you have a – I was quite impressed with your three reasons why the website is positive to you, but it's putting a pretty charitable gloss on it. I mean, we're here with the website basically saying that it doesn't have a definition of natural, correct? And so why – why would we send it back over to the FDA? Why not just let it go and up or down, it's either false or misleading, or maybe it's not, I have no idea. But isn't that just something that ought to proceed under California law? And with the proviso that there are labeling requirements, Federal labeling requirements, that things have to be accurate. Because, Your Honor, the – in this case, the Syntec factors are all supportive of the view that the agency should be given the opportunity. And that is the key here. Not whether or not – it's not for this Court to speculate as to what the – as to what FDA is going to do in the cosmetics arena. Rather, it's to afford it the opportunity to act in a proper procedural posture in which comments will be taken, in which the commissioner has the authority and certain tools at her disposal to gather information in which interested parties can participate. The core issue here in the primary jurisdiction is the opportunity for the FDA to act. And I don't believe that there's any record here that such an opportunity would be futile, that the opportunity – Ginsburg. If it wouldn't be, why didn't you, as Chief Judge Thomas suggested, if you really want to know what's natural and not natural, why wouldn't you file a petition? Because you don't really want to know the answer. The answer will be, we're not going to do it, we're not going to tell you. Proceed at your own risk. The FDA's position with respect to labeling, we believe, is comprehensive, as it relates specifically to ingredients. The very website that we've been discussing makes a further note that an instruction, don't use terms such as natural as part of an ingredient statement, because ingredients must be listed by their common or usual names without additional description. This appears – the Court's order asked us to address the first part of the answer. This was the second part. So the FDA has provided guidance with respect to these areas in the food context. FDA has provided guidance, detailed guidance, with respect to the ingredient statement, identity on the front – on the principal display panel. It is our view that the current state of the law with respect to FDA's pronouncements on labeling of cosmetics is that the term natural has no further requirements above and beyond that which the 21 CFR Part 700 already directs. Well, so then, just let's take – spin that out, then. If the California UCL is not preempted by Federal law, but it's consistent with Federal law, then is that the answer, that you run your case, you put the CFR on the jury instructions or in summary judgment, and then there's a determination made? Because you, of course, think it's preempted. So, right? The gravamon of the complaint in this case is that the meaning of natural, as defined in FDA's food regulations, as defined in the USDA's regulations with respect to poultry and livestock, should be imported into the cosmetics arena. That's the nature of the complaint. When Mr. Kravic urges that this issue has come before him multiple times, what he's referring to is the food cases. And the suggestion that this is now a scientific fact is all related to those cases and those instances in which these They provide us some evidence of how FDA has treated this in another context, but it doesn't inform how the FDA will act in the cosmetics arena if it is afforded an opportunity to act. And that's really at the core of the primary jurisdiction doctrine and informed Judge Hamilton's decision in this case in her weighing of the items whatsoever in an important sector of the economy that touches not just a handful of products that are issued here. There are over 200 case in products. But in Syntec, we actually did refer it to the agency. We didn't dismiss it. Yes, that's right, Your Honor. Right. And we would refer the Court to a series of instances in which district courts have dismissed without prejudice the Watkins v. Vital Pharmaceuticals out of the central district in 2013. State law claims were subject to primary jurisdiction. A case out of our own northern district here, the All One God Faith v. Hain Celestial that involved actually the Jason products was dismissed without prejudice and referred to the U.S. and under the doctrine of primary jurisdiction. Right. But I'm repeating some of what I said. But the danger of that is if there's no anticipation that either of the parties are going to proceed in front of the agency, then it's a pointless invocation of the doctrine. It's — if, in fact, Your Honor, the parties elected not to proceed. But in this case, it is — why is it not incumbent upon the appellants who — Well, he says it's going to be futile. He doesn't want to go before the agency. And he did. If it's a motion, why isn't it incumbent on him? And he also may have not — it may have been done inelegantly, but he did go in some form to the agency. Well, the answer is you do it in a procedurally cognizable way under 1030, a petition that identifies the exact remedy that you're seeking, and then interested parties have an opportunity to participate. We would certainly participate because there is an obligation on the Commissioner to issue a decision. And in rendering that, in performing that function over a period of six months, the Commissioner is granted a range of tools and evidentiary powers to gather information so as to make that determination. That's what should have happened here. But the fact that it did not happen is not a failure in Judge Hamilton's order. It's a failure in the appellant's behavior in failing to provide a cognizable — a procedurally cognizable form in which to present the issue to the agency. Well, at a minimum, why shouldn't it go back and have that form, whether it's via a court referral or a proceeding pursuant to the particular rules and regulations about how you do put one of these forward? What's your objection? Because you just got done telling me that, I mean, in effect, you're not afraid of the FDA, right? As an academic question, Your Honor, that would be entirely appropriate. Had the appellants below raised the issue with Judge Hamilton that dismissal without prejudice would cause them some injury, that issue was not presented below. Well, we're presented with that. Why can't we just send it to the FDA? We did it in the primary jurisdictions that got on appeal. In Syntac, this Court took the issue of primary jurisdictions to a sponte. And I can tell you the parties were not enthused about that. I can't speak for the parties in Syntac, Your Honor. That was just a perception, perhaps. I see my time has run out. And I thank the Court for its questions, but I won't delay further. Thank you. Thank you. Thank you. Rebuttal. Thank you. I think there's one misnomer here, which is the need of private party to actually ask the FDA. The FDA can do it on their own. And they have had more, they've even given it thought. I mean, here we have, as you set forth in your January 14th order, a statement by them that we're not defining natural. You know, they do explain in the letter why, because there are limited resources. They want to focus on health and safety issues. They understand it would be a very long, protracted rulemaking process. These are exactly the same things that they went through when they were looking at regulating natural for the food context, and they decided not to. So again, every indicia here is that there would be no difference. The FDA doesn't want to define natural at this time. Well, let me talk through with you some of the options. Number one, your opposing counsel says that with respect to prejudice vis-à-vis a dismissal as opposed to a stay, that that was never raised in the district court. So to begin, I would appreciate your comment on that. Yes, Your Honor. In the Reeder case, the Supreme Court makes it quite clear that the district court has a discretion to stay and refer. And if and only if the district court determines that there would be no actual prejudice, then the court can dismiss without prejudice. Here, all the district court had to do is read the complaint. It's very clear. You know, that complaint is a pretty long one. It is, but it's very clear that we're alleging. It's 150 paragraphs. I mean, you can read it, but then.  If you dismissed this thing, motion for reconsideration, if you dismiss this, we have a whole series of prejudicial fallout from that. Well, Your Honor, I think it was quite obvious from the complaint. I think you allege a class period that spans the statute of limitations. That's pretty obvious. I think you can look at the paragraphs, and there's a special heading and a special section for each plaintiff. You can look there and see the time period of what they allege, given that it is incumbent upon the district court under the Supreme Court's decision in Reeder to assess that prejudice before taking the step of dismissal without prejudice, because they have the option of staying and referring. I would point out that, yes, we did not specifically raise it, but then again, the court looked at that before dismissal, and here the court went the next step and entered judgment against us. We had no choice but to appeal. So then let's say that we got past that issue. And let's say that we cannot credit the letter from the FDA to you for a variety of reasons, but now we have this website information on the table. Is that something that should be remanded to the district court for consideration? Or do you think that this Court should, as Judge Thomas suggests, do like we did in the Syntax case and refer it ourselves to the FDA? Well, Your Honor, it is a de novo review. So I think Your Honors can fully consider this statement by the FDA. And I think Your Honors fully have the power to reverse, refer, or do whatever Your Honors think appropriate, which the de novo review gives Your Honors. I would suggest, again, that referral to the FDA, if you look at the indicia, look at it. I understand the letter. But the letter in there explains a lot of what they're thinking. And if you look at that and then compare what they've said in the food realm, which is exactly the same thing, and they don't want to regulate there either, I mean, this FDA is saying, we are a limited fund. We want to focus on health and safety, which we all understand that. I mean, I think we want the regulator to do that first. We don't want to focus as much on the labeling. We're going to tell people, give them some guidance here, which they did in their statement, which is don't be false and misleading. And natural, there's a lot of terms on labels that the FDA doesn't define. They don't define all the terms. So they've decided not to define this one. There's probably thousands of other terms that are used on labels that the FDA doesn't define. They don't have to define every one. And here, unlike most of those other terms, they actually thought about it and they have shown in their statement on their website that they did give it some thought and they decided not to. So I think if you look at all those indicia, you add them up and you say, okay, we refer, aren't we really doing something that the FDA said they don't want to regulate right now? Wouldn't this act be futile at this point? Shouldn't we let the case proceed? And should we also think about this other thing? There's a copycat case filed. It's pending. It's still pending. Down before Judge Bieler. So that's going on. So then what? What are you going to do with that case? Is Judge Bieler going to have to stay it? I mean, there are ‑‑ Well, before we get too far afield, our questions have taken you over time. No, no. Any further questions from the panel? All right. Thank you very much. Thank you very much for your argument. Thank you both for your arguments. We'll take this case under submission for decision.
judges: Thomas, Tashima, McKeown